IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Walker Stevenson, | Case No. 3:11 CV 1863 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Ohio Department of Rehabilitation and Correction, et al., | |
| Defendants. | |

*Pro se* Plaintiff Walker Stevenson filed this action under 42 U.S.C. §1983 against the Ohio Department of Rehabilitation and Correction ("ODRC"), ODRC Director Terry Collins, and the following employees of the Allen Correctional Institution ("ACI"): Warden Jesse Williams, Psychologist Brad Potts, Nurse Kelly Mason, Mandate Committee Chairperson Patricia Shawberry, and Psychiatrist Abul Hason. Plaintiff, who is currently incarcerated, alleges Defendants are giving him psychiatric medications without his consent in violation of the Eight Amendment. Because prisoners have a due process interest in avoiding the involuntary administration of medication, this Court also construes Plaintiff's allegations as arising under the Due Process Clause of the Fourteenth Amendment. Plaintiff seeks injunctive and monetary relief.

## BACKGROUND

Plaintiff entered prison in 1993 to serve a twenty-year to life sentence for murder. He has received mental health services since that time (Doc. No. 1 at 24). Although Plaintiff denies he has a mental illness, his medical records indicate he was diagnosed with paranoid schizophrenia or a

delusional disorder (Doc. No. 1 at 24–25, 42). He has been medicated involuntarily since 2004 (Doc. No. 1 at 24).

Prior to receiving mandatory treatment, Plaintiff was involved in numerous physical altercations with other inmates and correction officers after he confronted them about perceived harassment. At times, these confrontations caused Plaintiff to suffer serious personal injuries (Doc. No. 1 at 24). He repeatedly accused inmates and officers of yelling in or close to his right ear when they were in line awaiting meals, sitting in the dining hall, or walking by him in the hallways (Doc. No. 1 at 9–11). He claims the sound vibrations aggravated him and penetrated through his ear causing great pain (Doc. No. 1 at 11). Plaintiff also accused his cellmates of "playing in urine" or using urine to tamper with his personal items (Doc. No. 1 at 10). He frequently washed his cup and carried his toothbrush and toothpaste with him (Doc. Nos. 1 at 24; 1-2 at 42). Plaintiff responded by contaminating his cellmate's bedding and clothing with urine (Doc. Nos. 1 at 42, 52; 1-2 at 30). He claimed inmates vandalized his property by gradually marring his earphones, fraying cords, wearing down the sides of his shoes, and stretching or ripping his clothing (Doc. No. 1 at 15, 71). After each incident, Plaintiff confronted the offending party, often escalating to a physical altercation.

Plaintiff was transferred to increasingly more secure facilities, and spent much of his prison time in the residential treatment units of these prisons. When placed with the general population, Plaintiff got into physical altercations and was returned to the residential treatment units (Doc. No. 1 at 24, 42).

In February 2004, Plaintiff was placed on mandatory treatment (Doc. No. 1 at 24). Mental health staff report Plaintiff responded favorably to the medications and was able to be released to the general population (Doc. No. 1 at 24). Plaintiff receives a hearing every 30 to 180 days to review the

2

need for continued treatment (Doc. Nos. 1 at 26; 1-2 at 15). His medication was discontinued in 2009 due to a health issue (Doc. No. 1 at 17–18, 42). Prison staff note Plaintiff did well for five or six months without the medication; however, his mental health began to decline thereafter. Plaintiff was readmitted to the residential treatment unit after a violent assault on his cellmate (Doc. No. 1 at 42). Although Plaintiff complains the medication makes him tired and lethargic, his treatment team concluded the gain of treatment substantially outweighed the risks of potential side effects (Doc. No. 1 at 42, 85–86).

Plaintiff continues to deny having a mental illness, and asserts the mandated medication constitutes cruel and unusual punishment prohibited by the Eighth Amendment. He asks this Court to order Defendants to stop medicating him, expunge all of his conduct reports, and award him monetary damages.

### STANDARD FOR DISMISSAL

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), this Court must dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997).

A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The factual allegations in the pleading must be

sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing the complaint, the court must construe the pleading in the light most favorable to the plaintiff. *See Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir.1998).

## ANALYSIS

### Defendants Did Not Violate Plaintiff's Eighth Amendment Rights

The Eighth Amendment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," against which courts must evaluate penal measures. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. In *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the Supreme Court set forth a framework for determining whether certain conditions of confinement constitute "cruel and unusual punishment" prohibited by the Eighth Amendment.

First, Plaintiff must plead facts which, if true, establish a sufficiently serious deprivation occurred. *Id.* Seriousness is measured objectively, in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle*, 429 U.S. at 103). Second, Plaintiff must establish a subjective element: he must demonstrate prison officials acted with a culpable mental state. *Id.* at 9. Routine discomforts of prison life do not suffice. *Id.* Only "deliberate indifference" to a serious medical need or extreme deprivations regarding the conditions of

4

confinement will implicate the protections of the Eighth Amendment. *Id.* "Deliberate indifference" is characterized by obduracy or wantonness -- it cannot be predicated on negligence, inadvertence, or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Eighth Amendment also establishes the government's responsibility to provide care for an inmate's psychiatric needs. *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006). Indeed, prison officials who fail to intervene and treat a mentally ill inmate may be found to be "deliberately indifferent" to the inmate's mental health. *See Braswell v. Corrections Corp. of America*, No. 09–6100, 2011 WL 1462937 (6th Cir. 2011); *Clark-Murphy*, 439 F.3d at 292 (citing several cases in which failure to provide psychiatric treatment to mentally ill inmates violated the Eighth Amendment).

Generally, Eighth Amendment claims arise from the denial, delay, or intentional interference with a prisoner's medical treatment. *See Estelle*, 429 U.S. at 104–05. Where the prisoner is in the care of a doctor, and the claims are based on negligence in diagnosing or treating a medical condition, there is no cause of action under the Eighth Amendment. *Id.* at 106. Here, Plaintiff's claim is not one of denial of medical or psychological care but rather one of mandated care. Under these circumstances, Defendants may violate the Eighth Amendment if the treatment imposed reflected "an unnecessary and wanton infliction of pain," *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981), or if Plaintiff received care that was so "grossly inadequate" that it amounts to deliberate indifference. *See Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir.2006). For Defendants to be considered deliberately indifferent to Plaintiff's treatment, Plaintiff must demonstrate they chose a course of

action "despite [] knowledge of a substantial risk of serious harm" to Plaintiff. *Farmer*, 511 U.S. at 842. This he cannot do.

Plaintiff fails to suggest Defendants acted with this level of culpability. Although he disagrees with the determination, Plaintiff was diagnosed with paranoid schizophrenia and has been monitored by prison mental health departments since 1993 (Doc. No. 1 at 24). Plaintiff has a documented history of violent behavior in response to what he perceived as harassment by officers and fellow inmates. This behavior often resulted in Plaintiff sustaining serious physical injuries and placed others at risk of serious physical harm. Prison officials tried less intrusive methods to reduce the incidents of violence, including providing Plaintiff with placement in the residential treatment units, moving him to more secure facilities with individual cells, and even providing him with ear plugs (Doc. No. 1 at 6-13). When those measures did not work, mandatory treatment was recommended by Plaintiff's psychiatrist -- a decision approved by a committee (Doc. No. 1 at 24, 42).

The decision to treat Plaintiff is reviewed periodically to determine whether there is continued need for medication. His physical health has been closely monitored, and Plaintiff was removed from medication for a period of time due to other health concerns (Doc. No. 1 at 17–18, 42). Once his psychiatrist determined that Plaintiff's mental health was deteriorating, the treatment was re-administered. This is not deliberate indifference. Nothing in the records suggests Defendants acted with conscious disregard for a substantial risk of serious harm, or that their actions could be characterized as a "wanton infliction of pain." *See Rhodes*, 452 U.S. at 345. Accordingly, Plaintiff's Eight Amendment claim is dismissed.

**Defendants Did Not Violate Plaintiff's Due Process Rights**

Plaintiff's objection to his treatment is not that it is inadequate, but rather that it is involuntary. Prisoners have a substantial liberty interest, grounded in the Due Process Clause, in avoiding the involuntary administration of antipsychotic medication. *Washington v. Harper*, 494 U.S. 210, 221–22 (1990). That interest, however, may yield where a seriously mentally ill inmate "is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. In those situations, freedom from involuntary medication is outweighed by the state's obligations to "provide prisoners with medical treatment consistent . . . with their . . . medical interests" and to take reasonable steps to ensure inmates' safety. *Id.* at 225. Because Plaintiff's claim is, in essence, a challenge to the decision to medicate him against his will, this Court will analyze the claim under the Due Process Clause of the Fourteenth Amendment. *See Boag*, 454 U.S. at 365 (holding *pro se* pleadings are liberally construed).

The Due Process Clause has both a procedural and a substantive component. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires the government to provide due process before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349–53 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure the individual affected has an opportunity to participate in the process. *Id.* In the context of involuntary medication, due process requires, at a minimum, that the decision to medicate be made by medical staff and reviewed by independent medical decisionmakers. *Harper*, 494 U.S. at 232–233. The review must take place at an

administrative hearing prior to the treatment, and the inmate must be given notice of the hearing, the right to appear, and the right to present evidence and cross-examine witnesses. *Id.* at 235.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures used. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986). It serves to limit official misconduct which infringes on "fundamental rights" not explicitly protected by the Bill of Rights, or conduct that is "shocking to the conscious" as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

The record in this case demonstrates Plaintiff received procedural and substantive due process prior to being involuntarily medicated. After Plaintiff's psychiatrist recommended treatment, Plaintiff received a hearing before a committee comprised of independent medical personnel -- including a physician, a psychologist, and a nurse (Doc. Nos. 1 at 4; 1-2 at 14). Plaintiff was notified of the hearing, and appeared and spoke on his own behalf (Doc 1-2 at 11, 13). The decision to commence treatment was also reviewed and approved by the Warden (Doc. No. 1-2 at 14). Plaintiff appealed the committee's decision to the ODRC Bureau of Mental Health Services, which upheld the decision to medicate, but required review by the committee in thirty days (Doc. No. 1-2 at 15). Nothing in the record suggests Plaintiff was denied procedural due process.

Likewise, Plaintiff was not denied substantive due process. Defendants' actions do not implicate fundamental rights and do not "shock the conscience." To state a claim for denial of substantive due process, the conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Parate v. Isibor*, 868 F.2d 821, 833 (6th Cir. 1989) (internal citations omitted). Defendants' actions do not rise to the level required under this rigorous standard.

8

Because Defendants' actions do not impinge on a fundamental right or "shock the conscience," their decision will satisfy the requirements of substantive due process so long as it is rationally related to a legitimate state interest. Indeed, states have an obligation to provide prisoners with medical treatment consistent with their own medical interests, and with the needs of the institution. *Harper*, 494 U.S. at 225–26. Prison administrators not only have an interest in ensuring the safety of prison staff, but also the duty to take reasonable measures for the prisoner's own safety. *Id.* Where an inmate's mental disability poses a real threat to the prison population, "the State's interest in decreasing the danger to others necessarily encompasses an interest in providing him with medical treatment for his illness." *Id.*

Here, Plaintiff was diagnosed with paranoid schizophrenia and initiated numerous physical altercations when he perceived he was being harassed by other inmates or prison staff. The record supports the conclusion that the decision to medicate was rationally related to the legitimate state interest of protecting Plaintiff, other inmates, and prison staff. Therefore, Plaintiff's due process claim is dismissed.

## CONCLUSION

For the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. §1915(e). Furthermore, under Section 1915(a)(3), this Court certifies an appeal could not be taken in good faith.

IT IS SO ORDERED.

           s/ *Jack Zouhary*
    JACK ZOUHARY
    U. S. DISTRICT JUDGE

January 18, 2011